CITY RAILWAY CO. v. BEARD, County Treas.

U. S. District Court, S. D. Ohio, E. D., No. 41, Decided June 5, 1922

**TAXATION—State tax commission a legislative agency—(1) Assessment becomes justiciable, when—(2) GC. 5611-2—(3) Inequality of taxation in violation of constitution—(4) Judicial power over—(5) Equity.**

*SATER, D. J.:*

Epitomized Opinion

The tax commission of Ohio had fixed the valuation of property of plaintiff at what is claimed to be its true value in money. The plaintiff did all that the law prescribed to get valuation reduced from $2,970,220 to 60 per cent of $2,000,000, its value. It paid the first semi-annual payment of taxes and brought this suit to enjoin the state and county officials from collecting the last half, alleging that the tax commission of Ohio had permitter other property to be for a long time placed on duplicate at 60 per cent of its value, that this made the tax rate much higher, that it would be if all property was assessed at the constituted rate of 100 per cent of its value; that it was assessing

plainttiff at 100 per cent and 30 per cent more.

The tax commission contended that the plaintiff had an adequate remedy at law, by Sec. 5611-2, to appeal to the common pleas; that the federal court did not have jurisdiction. Held:

(1) Taxation is legislative in assessment, and the tav, the boards created by the legislature have done that which the law authorizes; the assessment becomes justicable, and resort may be to a court of equity.

(2) Sec. 5611-2 GC. language, "Petition in Error," is a misnomer, the proceeding is de novo; but the court is limited to fixing the value at its true value in money only, and does not allow the fixing of the value at the uniform value, other property is assessed at; consequently there is no adequate remedy at law and a court of equity has jurisdiction.

(3) Where property has been generally valued at a per cent of value below 100 per cent, all property must be assessed on the basis of the same per cent, i. e., uniform per cent of value.

(4) Assessment of property at a higher per cent of value than other property is a fraud upon the owners of the higher assessed property.

(5) Where the owner is assessed in violation of his rights under the federal constitution, he does not need to pursue his statutory rights, but may invoke the aid of a federal court.

.6) The state rule being a uniform rule of 100 per cent, if the practice has been to assess at 60 per cent, or any other per cent than 100 per cent and a property is assessed at a greater value, the courts will grant the necessary relief. Injunction granted.

**Attorneys**—McMahon, Corwin & Landis, Dayton, for plaintiff; H. E. Man & R. E. Hoskot, Dayton, for defendant; John G. Price, Ray Martin and Clarence D. Laylin, Columbus, for tax commission.

## THE OFFICE OF JUDGE

(The following article contributed to the Baltimore, Md., Daily Record, by Eugene O'Dunne, Esq., of Baltimore, is republished by request, as the subject is one of interest.)

### I. Judicial Impatience Always Inexcusable

In Sergeant Ballentines Memoirs of the English Judgees, he emphasizes a thought which is paramount in my conception of judicial duty that a judge has no excuse for discourtesy, either to the counsel in a case or to their clients. His position of judge naturally commands a certain respect and consideration, and it is cowardly to abuse his position to their detriment or embarrassment. Any impatience publicly manifest impairs his usefulness, and sometimes produces nervousness in counsel of inexperience, who ought to be gracefully encouraged and not publicly tramped upon to their own mortification and embarrassment, and oftentimes injury in the presence of their slients and spectators. It is no answer to say the judge has a kind heart, or a good head, if his jublic judicial manner is offensive to the bar. A judge who gives visible evidence of temper, who raps his gavel and orders you silenced and seated because he disagrees with your logic or law, should forthwith send in his resignation from the bench for the good of the service. He should be conscious that he is an officer of the court, and should preserve order, if necessary even at the expenes of his life, but he should not imagine he is the only officer of the court and should not be unmindful of the fact his brothers of the bar are also sworn officers of the temple of justice and

also entitled to respect by virtue of that fact, which they in turn should be equally mindful of that order, courtesy and personal harmony shall go hand in hand with the legal application of the machinery of law to litigated questions.

### II. Professional Intercourse on Equal Footing Mutually Beneficial

I am not in sympathy with the thought that a judge should be a recluse, a spirit apart from the bar. On the contrary, I think he should mingle freely and constantly and on equal footing with his brethren of the bar and that a constant and daily interchange of ideas and ideals will be mutually beneficial to both bench and bar (eschewing of course all discussion of matters in litigation). I should like to see a closer union on a more intimate footing between bench and bar than now obtains.

### III. "Patience and Gravity of Hearing"

Lord Bacon spoke with wisdom when he emphasized the importance of "patience and gravity of hearing" in the trial of causes. Some judges think they make a reputation for brilliancy by sawing off counsel's examination of witnesses and asking direct questions, answers to which they will receive in due course through the recognized medium of counsel in the conduct of his cause. There is nothing worse than a talking judge. unless it be one unwilling to even listen.

### IV. Justice Unaffected by Status of Parties of Eminence of Counsel

Neither the eminence of counsel, the wealth or position of litigants or witness should weigh or sway in the administration of justice, the placid waters of which should run with equal depth and strength for the poorest and most humble foreigner, if right and justice is on his side.

### V. Judge—Not Advocate

A judge must sit as judge and not as advocate. When he ascends the bench he should remember that the arena of litigation is the bar, and that he has, while he remains judge, stepped out of that arena and he should stay out.

### VI. No Justice With a Broad Axe, But According to Precedent and Rules of Evidence

There should be no effort to make his decision popular, but every conscientious and painstaking effort to make his decision right, and by right I do not mean abstract justice or what is sometimes called "justice with a broad axe," but justice under the law and in pursuance of the recognized rules of evidence. He owes this duty to the bar. Lawyers advise their clients as to the merits of litigation. The only standards they have in advance of the trial are the stautes, the rules of reason, in the absence of statutes, or the decisions of courts and the rules of evidence through which they are arrived at. Therefore, in the trial of causes those standards should apply and the lawyer not have to afterwards explain to his client that in advising a course of action he assumed the court would be governed by the decisions and rule of evidence, which the court refused to apply.

### VII. Counsel Should Have Credit For His Research and Labor

When an able and upright bar prepare their cases and by research work and digest of decisions save the court its labor and enable it to reach a con-

(Continued on Page 141)